**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

MONA MALHOTRA,

        Plaintiff,

        v.

CVS HEALTH INC.,
CAREMARK, LLC,

        Defendants.

No. 23-cv-15429

Judge Franklin U. Valderrama

## ORDER

Plaintiff Mona Malhotra (Malhotra), worked for CVS as a Senior Consultant and Data Engineer until she was fired. Malhotra, proceeding *pro se*, sued CVS, asserting claims for defamation *per quod*, civil conspiracy, intentional infliction of emotional distress and negligent infliction of emotional distress. Second Amended Complaint (SAC) R[1]. 46. CVS moves to dismiss the SAC pursuant to Federal Rule of Civil Procedure 12(b)(6). R. 47, Mot. Dismiss. For the reasons stated, the Court grants in part and denies in part the motion to dismiss.

## Background[2]

Malhotra began working for CVS in 2016 as a Senior Consultant. SAC ¶ 8. In January 2022, Bhavana Atti Janakiram (Janakiram) became Malhotra's supervisor.

---

[1]Citations to the docket are indicated by "R." followed by the docket number or filing name, and where necessary, a page or paragraph citation.

[2]The Court accepts as true all of the well-pled facts in the Complaint and draws all reasonable inferences in favor of Malhotra. *See McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 879 (7th Cir. 2012).

*Id*. ¶ 11. Malhotra alleges that Janakiram began "creating a hostile work environment." *Id*. ¶ 12. This included calling her names like "Madam Mona," and taking away projects from her. *Id*. Malhotra then filed a complaint with HR against Janakiram. *Id*. ¶¶ 14–16.

According to Malhotra, Janakiram in retaliation for her filing the complaint, created a forged Corrective Action Plan (CAP), which stated, among other things, that "[a]fter numerous unsuccessful attempts to help [Malhotra] correct her behavior via coaching sessions, verbal warnings, [and] mentoring[,] we are moving to formal corrective action." SAC ¶¶ 18–19; *see also* Compl., Exh. A. Malhotra alleges that there were in fact no coaching sessions, verbal warnings, or mentoring. SAC ¶ 19. The CAP also stated that Malhotra had "received a copy of the form and signed." SAC ¶ 20; *see also* Exh. A at 3. However, Malhotra alleges that she never received this document and never signed it. *Id*. Consequently, a false CAP was now on her record.

Malhotra alleges that Janakiram then created another "forged" document, which stated: "Mona you were issued a level III corrective action on November 30th, 2022, for inappropriate workplace behavior and insubordination to your manager". SAC ¶ 21; Exh. B. Mona maintains that she was never issued a level III corrective action. *Id*. On January 17, 2023, CVS terminated Malhotra. SAC ¶ 22.

Malhotra alleges that since her termination, she has applied for seven positions at CVS, and despite progressing through multiple rounds of interviews, she has been "blacklisted" by CVS due to her history there. *Id*. ¶ 103. Malhotra has also since applied for a position at Walgreens, but through "peer verification," Walgreens

found out about Malhotra's "blacklisted" status at CVS and rejected her application. *Id.* ¶ 104.

Malhotra, proceeding *pro se*, sued CVS, asserting four claims: (1) defamation *per quod* (Count I), SAC ¶¶ 26–30; (2) civil conspiracy (Count II), *id.* ¶¶ 56–76; (3) intentional infliction of emotional distress (IIED) (Count III), *id.* ¶¶ 77–42; and (4) negligent IIED (Count IV), *id.* ¶¶ 89–105. CVS moves to dismiss Malhotra's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. *See generally*, Mot. Dismiss. The fully briefed motion is before the Court.

## Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Federal Rule of Civil Procedure 8, a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). To survive a motion to dismiss, a complaint need only contain factual allegations, accepted as true, sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79. When

reviewing *pro se* complaints, the court must employ standards less stringent than if an attorney had drafted the complaint. *Haines v. Kerner,* 404 U.S. 519, 520 (1972); *Whitford v. Boglio*, 63 F.3d 527, 535 (7th Cir. 1995).

## Analysis

### I.     Defamation *Per Quod* (Count I)

In Count I, Malhotra asserts a claim for defamation *per quod*. According to Malhotra, CVS engaged in defamation by disseminating false statements about her alleged poor performance. SAC ¶ 28.

To state a claim for defamation under Illinois law,[3] a plaintiff must plead "facts showing that the defendant made a false statement about the plaintiff, that the defendant made an unprivileged publication of that statement to a third party, and that this publication caused damages." *Green v. Rogers*, 917 N.E.2d 450, 459 (Ill. 2009). Illinois law recognizes two types of defamation claims: defamation *per se* and defamation p*er quod*. *Dubinsky v. United Airlines,* 708 N.E.2d 441, 447 (Ill. 1999). "Statements are considered defamatory *per quod* if the defamatory character of the statement is not apparent on its face, and extrinsic facts are required to explain its defamatory meaning." *Kurczaba v. Pollock*, 742 N.E.2d 425, 433 (Ill. App. Ct. 2000) (citation omitted). Defamation *per quod* "requires a plaintiff to show that the false statements caused him harm," while defamation *per se* involves a statement that

---

[3]This case is before the Court based on the diversity of citizenship of the parties. A Court sitting in diversity must apply substantive state law. *See, e.g., Fednav Int'l Ltd. v. Cont'l Ins. Co.*, 624 F.3d 834, 838 (7th Cir. 2010); *Auto–Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009). Neither party disputes that substantive Illinois law applies in this case.

"expose[s] the subject to such great obloquy that they are actionable without proof of injury." *Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 613 (7th Cir. 2013) (citing *Tuite v. Corbitt*, 866 N.E.2d 114 (Ill. 2006)).

CVS argues that Malhotra has failed to state a claim for defamation *per quod* as she fails to allege a defamatory statement. Mot. Dismiss at 3–4. Second, CVS argues that her claim is subject to qualified privilege. Mot. Dismiss at 4–5. Last, she fails to allege special damages. The Court addresses each argument in turn.

### A. Defamatory Statement

CVS contends that because Malhotra does not explain the defamatory meaning of each of the allegedly defamatory statements (which admittedly are not defamatory on their face, because this is claim for defamation *per quod*), she fails to state a claim for defamation *per quod*. Mot. Dismiss at 3 (citing *Kinney v. City of Waukegan*, 2013 WL 4401366, at *3 (N.D. Ill. Aug. 14, 2013)). From CVS's point of view, the alleged defamatory statements only consist of Malhotra's supervisor's opinion of Malhotra, nothing more. *Id*.

Malhotra responds that the basis for the defamation claim are the two Corrective Action letters, which when taken in the context of "a broader campaign of false and defamatory statements, intentionally orchestrated by her direct supervisor, Bhavana," resulted in professional reputational harm and lost job opportunities. Resp. at 2–3. Malhotra insists that the two letters are defamatory, because they falsely portrayed her as "unprofessional, insubordinate, unethical, and unfit for advancement or continued employment" and created a false disciplinary record,

which resulted in termination and the loss of job opportunities. Resp. at 3. She specifically points to the following statements alleged in her complaint:

- "Mona has violated our Code of Conduct" SAC ¶ 36.
- "Mona, you were issued a Level III corrective action on November 30, 2022, for inappropriate workplace behavior and insubordination to your manager." SAC ¶ 37.
- "Since then, you have not shown any improvement in the behavior to align with CVS values and policies." SAC ¶ 38.
- "Violation of policy for Mona Malhotra" SAC ¶ 39.
- "Mona has been issued a Corrective Action" SAC ¶ 40.
- "After numerous unsuccessful attempts to help her correct her behavior via coaching sessions, verbal warnings, and mentoring, we are moving to formal corrective action." SAC ¶ 41.

Recall that "[a] defamatory statement is a statement that harms a person's reputation to the extent it lowers the person in the eyes of the community or deters the community from associating with her or him." *Green*, 917 N.E.2d at 459. "A *per quod* action requires allegations of extrinsic facts showing the defamatory nature of the language." *Anderson v. Vanden Dorpel*, 667 N.E.2d 1296, 1303 (Ill. 1996).

The Court finds, viewing the allegations of the SAC in the light most favorable to Malhotra, that she plausibly alleges a defamatory statement.[4] Malhotra alleges that the CAP contained false statements about her conduct, the warnings she had been issued, and the remedial plans that she had supposedly completed. For example, the letters stated that she had received warnings, undergone certain training and mentoring, which were never actually completed. Because these statements

---

[4]Malhotra points to multiple statements in her response, arguing that they are all defamatory. To be clear, the Court is not finding that all of the alleged statements necessarily suffice to establish defamation *per quod*, but because CVS only makes arguments about the statements generally, the Court will not do the work for CVS and go through statement by statement.

misrepresented her disciplinary history, she was fired for cause, "blacklisted" from CVS, and in fact denied future jobs based on the same events. At this stage, the Court finds this sufficient to state the defamatory nature of these statements. Malhotra has alleged sufficient details explaining why the misrepresentation of her disciplinary history, the training and remedial actions she had supposedly undergone, and the reports harmed her reputation and caused her to lose out on opportunities.

The only case cited by CVS in support of its contention that Malhotra's allegations are insufficient, *Kinney v. City of Waukegan*, 2013 WL 4401366 at *3 (N.D. Ill. Aug. 14, 2013), is distinguishable, as that case involved a plaintiff who did not point to *any* actual statements. Here, unlike *Kinney*, Malhotra, alleges multiple, specific statements. The Court next addresses whether Malhotra plausibly alleges publication.

### B. Publication

CVS argues, in a single sentence, without citing any case law, that Malhotra fails to allege publication because the statements were only disseminated to CVS employees. Mot. Dismiss at 3. Since CVS fails to support this argument with any relevant case law, the argument is waived. *Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) ("perfunctory and underdeveloped arguments, and arguments unsupported by pertinent authority are waived"). Malhotra counters that these statements were not only published to CVS employees, but also to the EEOC and to the Illinois Department of Labor. Resp. at 4.

Publication is an essential element in a suit for defamation. *Nabozny v. Optio*

*Sols. LLC*, 84 F. 4th 731, 737 (7th Cir. 2023). "In order to establish publication, there must be a communication of the allegedly defamatory statement to someone other than plaintiff." *Layne v. Builders Plumbing Supply Co.*, 569 N.E.2d 1104, 1110 (Ill. App. Ct. 1991). Put another way, "[a]ny act by which defamatory matter is communicated to someone other than the person defamed is a publication." *Missner v. Clifford*, 914 N.E.2d 540, 552 (Ill. App. Ct. 2009). Accordingly, the Court finds that Malhotra has alleged publication of a defamatory statement.

Next up is the requirement that Malhotra pled special damages.

### C. Special Damages

A plaintiff alleging defamation *per quod* must "specifically state" special damages. *Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 614 (7th Cir. 2013). "Illinois courts have consistently stated that general allegations such as damage to one's health or reputation, economic loss, and emotional distress are insufficient to state a cause of action for defamation *per quod*." *Kurczaba v. Pollock*, 742 N.E.2d 425, 433 (Ill. App. Ct. 2000). However, "it is enough to identify a concrete loss." *Pippen*, 734 F.3d at 614.

CVS contends that Malhotra fails to allege special damages. Mot. Dismiss at 4 (citing *Anderson*, 667 N.E.2d at 1303–04). The way CVS sees it, Malhotra only alleges that she was damaged and suffered injury to her personal and professional reputation, as well as humiliation and shame. *Id*. That, according to CVS, is not enough.

Malhotra disagrees, insisting that she alleges special damages, because she

8

was "wrongfully terminated from her employment" resulting in $380,000 in lost wages, and suffered "reputational harm that adversely impacted her professional standing, undermined her ability to secure future employment, and foreclosed opportunities for advancement, particularly in collaborative and managerial roles within her field." Resp. at 7. She further alleges that she applied to a position at Walgreens, but despite multiple rounds of interviews, was denied that position because Walgreens discovered her "blacklisted" status at CVS.

The Court finds Malhotra has alleged the loss of a specific job opportunity as a result of the statements, and this allegation is sufficient to allege special damages. This is distinguishable from those cases in which the plaintiffs "merely allege that . . . it is impossible for them to find work in their professional field," or those who "do not even allege any specific facts to show that they applied or interviewed for any specific positions that they did not get." *Rivera v. Allstate Ins. Co.*, 189 N.E.3d 982, 1000 (Ill. App. Ct. 2021). Indeed, Illinois courts have found allegations of the loss of specific job opportunities to be sufficient to plead special damages. *Becker v. Zellner*, 684 N.E.2d 1378, 1387 (Ill. App. Ct. 1997) (reversing dismissal of defamation *per quod* claim because allegation of actual loss of specific opportunity "is sufficient to support a claim of defamation *per quod*").

## D. Qualified Privilege

Finally, CVS argues that Malhotra's statements are subject to qualified privilege. Mot. Dismiss at 5. Under Illinois law, a defamatory statement is not actionable if it is subject to a qualified privilege. *Rao v. J.P. Morgan Chase Bank,*

*N.A.*, 153 F.4th 541, 552 (7th Cir. 2025), *reh'g denied*, 2025 WL 2752720 (7th Cir. Sept. 29, 2025) (citing *Solaia Tech., LLC v. Specialty Pub. Co.*, 852 N.E.2d 825 (Ill. 2006)). The elements of a qualified privilege are: "(1) good faith by the defendant in making the statement; (2) an interest or duty to uphold; (3) a statement limited in its scope to that purpose; (4) a proper occasion; and (5) publication in a proper manner and to proper parties only." *Id.* The qualified privilege doctrine is based upon "the policy of protecting honest communications of misinformation." *Kuwik v. Starmark Star Mktg. & Admin., Inc.,* 619 N.E.2d 129, 133 (Ill. 1993). "[O]nce a defendant establishes a qualified privilege, a plaintiff must prove that the defendant either intentionally published the material while knowing the matter was false, or displayed a reckless disregard as to the matter's falseness." *Id.*

"[A]n abuse of a qualified privilege may consist of any reckless act which shows a disregard for the defamed party's rights, including the failure to properly investigate the truth of the matter, limit the scope of the material, or send the material to only the proper parties." *Dent v. Constellation NewEnergy, Inc.*, 202 N.E.3d 248, 256 (Ill. 2022). Whether a statement is protected by a qualified privilege is a question of law. *Solaia*, 852 N.E.2d at 842.

CVS argues that the statements are subject to qualified privilege because they are statements made in a legitimate business context about the performance of an employee, and they were only disclosed to the appropriate managers at CVS. Mot Dismiss at 5. Malhotra in turn contends that the statements were not made in good faith, but with knowledge or recklessness of their falsity, in part because Bhavana

10

fabricated the statements to retaliate against Malhotra for reporting harassment. Resp. at 9. CVS replies that Malhotra has only made conclusory allegations that the statements are false, which is insufficient to allege abuse of the privilege. Reply at 5. The Court finds that Malhotra has the better of the argument.

Malhotra alleges that her supervisor retaliated against her for reporting harassment through creating the false Corrective Action reports, which asserted that despite numerous measures taken (which Malhotra alleges were not in fact taken), Malhotra continued to fail to meet the expectations of the job. It was based on these false Corrective Action reports that Malhotra was fired. In other words, the statements, according to Malhotra were not made in good faith. The Court agrees that Malhotra's allegations are not conclusory. This finding makes this case distinguishable from CVS's cited cases. *Huon v. Beatty*, 2011 WL 9717454, at *7 (Ill. App. Ct. 2011) ("the plaintiff alleges only a bald conclusion that the defendants acted recklessly in making false statements," and the complaint is "entirely barren of any facts that might suggest, much less support, any reckless act on the part of the individual defendants"); *Davis v. John Crane, Inc.*, 633 N.E.2d 929, 938 (Ill. App. Ct. 1994) (court held plaintiff had failed to point to facts of abuse of privilege to survive summary judgment where statements about employee's termination were based on independent, reliable reports, and no other facts supported malice). Further, under the cases CVS itself cites, once a plaintiff sufficiently alleges abuse of the privilege, "the issue of abuse of a qualified privilege presents a question of fact," and "[g]enerally, the jury decides those questions that center on whether the privilege has

11

been abused." *Huon,* 2011 WL 9717454, at \*6. Rather, Malhotra has alleged a motive for fabricating these statements and that they were in fact fabricated.

Accordingly, the Court finds that Malhotra has alleged sufficient facts to rebut qualified privilege at this stage.

## II.     IIED (Count III)

CVS argues that Malhotra fails to state a claim for IIED because: (1) the conduct alleged does not rise to the level of "truly extreme and outrageous" to sustain a cause of action and (2) Malhotra fails to allege that Janakiram wrote the CAP and Termination Document for the purpose of inflicting emotional distress. Memo. Dismiss at 9–10. Malhotra responds that she has alleged that CVS intended to cause emotional distress, and that the conduct is extreme and outrageous because CVS: (1) intended to cause the distress; (2) was in a position of authority; and (3) knew she was susceptible to emotional distress. Resp. at 14–19.

Under Illinois law, three requirements are necessary to demonstrate IIED: (1) the conduct involved must be truly extreme and outrageous; (2) the actor must either intend that his conduct inflict severe emotional distress or know that there is at least a high probability that his conduct will cause severe emotional distress and (3) the conduct must in fact cause severe emotional distress. *McGrath v. Fahey,* 533 N.E.2d 806, 809 (Ill. 1988).

Viewing the allegations of the complaint in the light most favorable to Malhotra, the Court finds that Malhotra has failed to sufficiently allege "truly extreme and outrageous" conduct. Whether conduct is "extreme and outrageous" is

judged on an objective standard. *Welsh v. Commonwealth Edison Co.,* 713 N.E.2d 679, 683 (Ill. App. Ct. 1999). Such conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of human decency." *Oates v. Discovery Zone,* 116 F.3d 1161, 1174 (7th Cir. 1997). In Illinois, this is a particularly exacting standard: "in the absence of conduct calculated to coerce an employee to do something illegal, courts have generally declined to find an employer's retaliatory conduct sufficiently extreme and outrageous as to give rise to an action for intentional infliction of emotional distress." *Arroyo v. Volvo Grp. N. Am., LLC*, 805 F.3d 278, 288 (7th Cir. 2015) (quoting *Welsh*, 713 N.E.2d at 683); *see also Edwards v. Commonwealth Edison & Barbara Stevens*, 2015 WL 6445417, at *3 (N.D. Ill. Oct. 23, 2015) (collecting cases demonstrating that courts "police the line of 'extreme and outrageous' conduct, particularly where employers are involved, only allowing especially abusive and atrocious transgressions to survive a motion to dismiss").

The Court finds that Malhotra has failed to sufficiently allege that Janakiram's falsification of Corrective Action letters in retaliation for reporting harassment, and Malhotra's subsequent termination—even if wrongful—amounts to "extreme and outrageous" conduct. As stated in the Court's earlier order, courts applying Illinois law routinely reach this same conclusion. *See Arroyo*, 805 F.3d at 288 (allegation that defendant fired military veteran plaintiff because of her PTSD did not amount to "extreme and outrageous" conduct); *Harriston v. Chicago Tribune Co.,* 992 F.2d 697 (7th Cir. 1993) (affirming dismissal of IIED claim where employer allegedly falsely accused plaintiff of having poor sales, reduced her sales territory and sales accounts,

13

reprimanded her for no reason, and ignored her concerns for her property and safety after her car was vandalized on several occasions in the employer's parking lot); *Petrovic v. American Airlines, Inc.,* 2014 WL 683640, at *1–3 (N.D. Ill. Feb. 21, 2014) (finding an IIED claim would not survive motion to dismiss where the employer fired plaintiff after falsely accused her of violating company policies); *Socorro v. IMI Data Search, Inc.,* 2003 WL 1964269, at *5 (N.D. Ill. April 28, 2003) (dismissing IIED claim where it was alleged that employer terminated plaintiff based on a incorrect background check, accused plaintiff of falsifying his employment application, and repeated to third parties that plaintiff falsified his application and spent six months in jail); *Fang v. Village of Roselle,* 1996 WL 386556, at *4 (N.D. Ill. July 5, 1996) (dismissing IIED claim where the employer terminated the plaintiff after he suffered a heart attack and requested disability benefits); *Witkowski v. St. Anne's Hospital of Chicago, Inc.,* 447 N.E.2d 1016, 1021–23 (Ill. App. Ct. 1983) (finding that employer's wrongful discharge of plaintiff to prevent him from receiving long-term disability benefits was not "extreme and outrageous" as a matter of law).

For these same reasons, the Court finds Malhotra's cited cases distinguishable, none of which involve an employer who falsifies a disciplinary report in retaliation for reporting harassment. The only case that comes close involved a tenured professor who engaged in a five-year defamatory campaign against a fellow professor, wherein he published numerous statements to third-parties and federal officials accusing plaintiff of serious criminal conduct, despite an investigation clearing him. *See Prakash v. Parulekar*, 177 N.E.3d 1, *as modified on denial of reh'g* (Ill. App. Ct. 2020).

14

The allegations here are much more limited and fall into the category of conduct that is not considered extreme and outrageous. Accordingly, the Court finds that Malhotra has failed to sufficiently allege that Janakiram engaged in "extreme and outrageous" conduct and therefore dismisses Count III. As such, the Court need not address whether Malhotra failed to allege that Janakiram intended to inflict emotional distress upon her.

### III.    Negligent IIED (Count IV)

The Court previously held that Malhotra's claim for negligent infliction of emotional distress was preempted by the IWCA. *See Phillips v. Exxon Mobil Corp.*, 2018 WL 3458286, at \*4 (N.D. Ill. July 18, 2018). CVS again argues that this claim is preempted. Mot. Dismiss at 10. Malhotra agrees that this claim should be dismissed for this reason. Reply at 20. Accordingly, the Court dismisses Count IV.

### IV.    Civil Conspiracy (Count II)

In Count III, Malhotra alleges that CVS employees conspired with Jankiram to commit the alleged unlawful acts leading to her termination. Compl. ¶¶ 56–76. CVS argues that the civil conspiracy claim should be dismissed because (1) a conspiracy cannot exist between a corporation and its employees; (2) all of her underlying claims fail; and (3) she has not alleged special damages from a conspiracy.

Malhotra responds that Bhavana Janakiram, Michael Chen, and Nayely Pelosi knowingly entered into an agreement to harm her through the defamatory statements. Resp. at 11. Further she maintains that there are exceptions to the rule that employers cannot conspire with their employees: (1) when a conspirator acts out

15

of self-interest rather than in the interest of the corporation, and (2) when the conspirator acts outside the scope of their official duties.[5]

CVS replies that Malhotra has simply alleged wrongful conduct by employees, and that without any facts supporting an interest by the conspirators unrelated to CVS's interests, or any facts supporting the idea that the conspirators were working outside the scope of their job, the claim fails. Reply at 7–8.

It is true that "[a]s a general rule of law, principals and agents are legally incapable of conspiring with one another because the acts of an agent are considered the acts of his principal." *Bilut v. Nw. Univ.*, 692 N.E.2d 1327, 1332 (Ill. App. Ct. 1998). There are exceptions to this rule, including when "the agent at the time of the conspiracy is acting beyond the scope of his authority or for his own benefit, rather than that of the principal." *Id.* at 1332. However, as CVS points out, every case cited by Malhotra declined to find that this exception applied. *See Bilut*, 692 N.E.2d 1327 (declining to apply exception where all co-conspirators were employees of defendant, and no facts supported idea that employees' interests in allegedly misappropriating plaintiff's research diverged from employer's interests); *Salaymeh v. InterQual, Inc.*, 508 N.E.2d 1155 (Ill. App. Ct. 1987) (holding no allegations apart from conclusory

---

[5]Plaintiff cites to *Hobson v. Tishman Speyer Properties, L.P.*, No. 09-CV-10107, 2011 WL 4001123, at *7 (N.D. Ill. Sept. 8, 2011) for the proposition that allegations of retaliatory firing and falsified disciplinary records by corporate employees can fall outside the scope of employment, allowing a conspiracy claim to proceed. This citation, however, is not available on Westlaw, and the Court cannot otherwise locate a docket corresponding with this case number. There is a case in the Northern District under the name *Hobson v. Tishman Speyer Properties, L.P. et al*, No. 1:07-cv-05744 (Feb. 17, 2009), but upon the Court's review of the docket, it did not involve claims for civil conspiracy. CVS confirms that on its own review, it also could not find a case with this citation. Reply at 7, n.3.

assertion of motives supported inference that employees acted for purpose different from hospital); *E.E.O.C. v. Outsourcing Sols. Inc.*, 2002 WL 31409584 at *17 (N.D. Ill. Oct. 24, 2002) (finding civil conspiracy claims barred on summary judgment as to conspiracy between employees in internal investigation of harassment claims because "the doctrine does not depend on whether the conspirators' actions were wrongful, but on whether the wrongful conduct was performed within the scope of the conspirators' official duties"). Malhotra cites to no case providing for an exception under the facts alleged here.

Indeed, Malhotra's own case acknowledges that "the mere fact that the conduct alone may be wrongful does not take it beyond the scope of his employment," "[n]or does the fact that [the employee and employer] may have had a shared interest." *Outsourcing Sols. Inc.*, 2002 WL 31409584, at *18. Malhotra points to the fact that the CVS employees wanted to retaliate against her for filing a harassment report, but she does not explain why this is no more than a shared interest with CVS, or merely a wrongful action. Resp. at 11. Malhotra cites to other various facts for why the employee's interests diverged from CVS's, including differences in "caste," as well as reimbursement for training courses she never undertook being withheld from her pay. Reply at 13. But these facts are not alleged in the complaint, and Malhotra does not otherwise explain how the employees were acting outside the scope of their employment beyond the fact that they committed wrongdoing.

Accordingly, the Court finds that Malhotra's conspiracy claims are barred, and grants CVS's motion to dismiss.

17

## V.      Conclusion

For the reasons set forth above, the Court grants CVS's motion to dismiss in part and denies it in part. R. 47. The Court denies the motion to dismiss Count I, and grants it as to Counts II, III, and IV. While the Court is mindful of the admonition from the Seventh Circuit that district courts should allow a *pro se* litigant, at least one opportunity to amend before dismissing the complaint with prejudice under Rule 12(b)(6), *Tate v. SCR Med. Transp.*, 809 F.3d 343, 346 (7th Cir. 2015), Malhotra has already had an opportunity to amend her complaint. *See* R. 43, Order. Accordingly, the Court grants the motion to dismiss Counts II, III, and IV and dismisses those claims with prejudice.

Dated: March 27, 2026

_____
United States District Judge
Franklin U. Valderrama